Hello and welcome to the other world. Here we are. Okay, hopefully all will go smoothly. Our case is 21-1695 Paradigm Care & Enrichment Center v. West Bend Mutual Insurance Company and Mr. Quincy. Yes, Your Honor. You may begin if you would like. Of course. Good morning, Your Honor, and may it please the Court. My name is Nathan Kinsey, and I represent Plaintiff Appellants Paradigm Care and Creative Paths Child Care Centers that have suffered serious and substantial harms due to the presence of the coronavirus on their properties and the orders. Their claims to their insurer, West Bend, to recover for their losses and damage were roundly denied. This is not, of course, the first time that this Court has heard argument on the interpretation of a property insurance policy where a plaintiff has alleged business income losses. How about 20 minutes ago? Yes, I was listening via our live stream, and I would say that this is the first time that this Court has been confronted with these specific provisions in this policy that provide coverage for losses stemming from communicable diseases. New interpretive guideposts to steer this Court's analysis. Mr. Kinsey, if we should determine that the meaning of direct physical loss or damage is in Sandy Point, if we should determine that is dispositive as to the meaning of that term, what claims would remain that are not dependent upon the interpretation of that phrase? Your Honor, the communicable disease coverage itself is an extension of coverage that is an independent grant of coverage beyond the interpretation of direct physical loss or damage. It merely requires loss of business income. That grant of coverage follows if a civil authority issues temporary shutdowns or suspensions that are due to an outbreak of a communicable disease or a waterborne pathogen at the insured premises. The policy language doesn't require that that outbreak be localized. The requirement that a civil authority be issued due to an outbreak at the insured premises demands only that the outbreak affect the insured property, which it has. We have pledged, and the District Court actually acknowledged it. Nowhere in the policy language does it say stemming from the insured premises, only at the insured premises, or limited to the insured premises. It simply indicates that the insured premises must be implicated in the civil authority order and the outbreak. And broadly to this Court and to this point, which was addressed substantially in the briefing, we should not read policy terms such as due to to imply a causation requirement so strict that because a civil authority order is issued due to the prevalence of the virus everywhere, it has not also implicated plaintiff's businesses within that geographic scope. Simply put, Your Honor, we have an outbreak here. The civil authority orders were issued due to an outbreak, and the outbreak was at plaintiff's businesses. It was also elsewhere, but the businesses were directly affected. At the very least, Your Honor, on this point we have ambiguity. The position that the policy holder has advanced is a reasonable one in light of the policy language, and the child care centers to meet that standard need not disnegate or disprove the insurer's position in order to obtain coverage. All we must do, Your Honor, is show that there are multiple competing reasonable interpretations of this policy language. That's the standard. Mr. Kinsey, are there different policy limits for the general property coverage and the communicable disease coverage? Yes, Your Honor. The communicable disease coverage is, as an extension of coverage, is subject to its own policy limits. I believe that they are 50,000 for one occurrence or 100,000 total in a policy period. It is an independent grant of coverage, but within the business owner's special property coverage. But considerably lower than the policy limits for the structure, for example. That's true, Your Honor. And on this point, standards in Illinois and Michigan support our interpretation of this policy language. We have recently been reminded by the Illinois Supreme Court in Sparrow v. State Farm Fire and Casualty Company that multiple reasonable interpretations favors the policy holder when there are competing reasonable interpretations. In Michigan, a fair reading of the entire contract of insurance leads one to understand that there is no coverage under the same circumstances. We have ambiguity. And in both states, Your Honor, ambiguity favors the policy holder. So, I put forward to you today with regard to communicable disease coverage, we have asserted coverage. We have also, Your Honor, asserted direct physical loss. Forgive me. Yes, Your Honor. You see, the communicable disease coverage is limited to an outbreak at the insured premises. What evidence is there of an outbreak specifically at the insured premises here prior to the shutdown orders? Well, Your Honor, the shutdown orders were issued in March of 2020. And we have, and this is one of the points the District Court actually acknowledged, Creative Paths, days after one of the shutdown orders was issued by the Village of Skokie in that case, had one of its active enrollees, a child on the premises, who tested positive. And the District Court acknowledged that based on what we know about the coronavirus now, that means that they had probably been infected and infectious for weeks before that. At the very least, with regard to Creative Paths, we have directly alleged some was it was infected before the closure orders actually took effect. Now, we also make the argument, Your Honor, that the policy language doesn't, it says at, but it doesn't say only at. And we would look at one reasonable interpretation of the policy language, being that, yes, the outbreak was ongoing throughout the state of Illinois and throughout the state of Michigan during this whole period of time. And we have alleged that it was at our premises, but it was also at other premises. And nothing in the policy language here contradicts that, or at the very least, renders the position that we have taken unreasonable on this point. It is not a, we do not believe that it's a far-fetched or a gossamer distinction, which courts would admonish against. Now, Your Honor, I understand I have reserved time for rebuttal. I'm happy to take any further questions, but at this point, I would reserve the remainder of my time. Thank you so much. Okay. Mr. Vitala, I'm afraid I'm murdering both your very lovely names. That was pretty good, Your Honor. Good morning. You may have pleased the court. My name is Jason Vitala with Hush Blackwell, and I represent Applee West Bend Mutual Insurance Company. I'm going to focus on communicable disease coverage because that was the only issue that was addressed during Mr. Quincy's argument. The court below, both courts below, decided, I'm sorry, I have two arguments today, but the court below in this case decided that communicable disease coverage was not satisfied because of the second of the two coverage requirements, and that is the causal nexus requirement. The causal nexus requirement arises out of the phrase, due to an outbreak at the insured premises as described in the declarations. So, in other words, there must be an ordered shutdown, not just due to an outbreak, but due to an outbreak at the insured premises. And that simply can't be met when you look at the face of the closure orders. The closure orders here were all intended to slow the spread. It states that expressly in each order. They're all prophylactic measures. They're all forward looking. They were not in response to any particular outbreak anywhere, much less an included in there. It doesn't say only at the insured premises. But the phrase only doesn't add anything when the policy already uses the phrase at the insured premises as described in the declarations. That can only mean one premises, and that is the one that's described in the declarations. If it was the intent that an outbreak anywhere was enough to satisfy communicable disease coverage, then the phrase at the insured premises as described in the declarations wouldn't be used at all. The policy would have just stopped at the phrase outbreak, and then you would know it could apply anywhere. Now, plaintiffs haven't pointed to any language in the orders themselves that link the orders to an outbreak at their premises, nor can they. A simple thought experiment drives this point home. Let's imagine for a moment that these insured premises never existed. Would the orders at issue still have been issued? And the answer is a causal nexus. Now, we submitted a Rule 28J letter recently that included decisions by the Fifth and Sixth Circuits, which are persuasive, but also directly on point here. One of those was Dakota Girls, which plaintiffs have not responded to. But in that case, the Sixth Circuit affirmed dismissal of a preschooler's claim under communicable disease coverage, which had a causal nexus phrase of due directly to, very similar to the phrase in the West Bend policy, which is due to. The court there found that regardless of an outbreak, the insured could not satisfy the causal nexus requirement. There were no allegations that the body that shut down the insured had ever even heard of the insured. And the order was issued as a prophylactic measure, not as a response to any specific illness or outbreak. Plaintiffs haven't responded to that. The other decision came out of the Fifth Circuit. This is the Terry Black's barbecue case, which plaintiffs have responded to. Plaintiffs have argued that the Terry Black's case doesn't apply or is distinguishable on a few grounds, none of which are actually valid. The first is they contend that the policy uses a different causal nexus phrase. The phrase in that case is result from. The phrase in this case is due to. Plaintiffs would have the court believe that result from and due to mean two different things, but that's simply not true. The dictionary definition of due to includes as a result of. As a result of and result from are functional equivalents. Plaintiffs have also argued that the phrase due to is not defined and that somehow that renders the phrase ambiguous, but of course we know it's black letter law. That's simply because a phrase in an insurance policy isn't defined doesn't mean that it's ambiguous. And that's especially true with common phrases like due to. The last argument that plaintiffs use to get around the Terry Black's decision is the efficient proximate cause argument. Plaintiffs argue that the court in Terry Black's didn't apply an efficient proximate cause standard, which is the standard that should apply here. But this argument fares no better because the court in Terry Black stated that it didn't even need to decide what standard applied because there was not even a remote causal connection between anything that occurred at the insured premises and the orders that shut them down. And besides, let's apply the efficient proximate cause standard for a minute and we'll see that plaintiffs can't even meet that standard if it did apply. That standard from the Bozak court tells us that if there is a covered cause of loss that sets into sequence an unbroken sequence of events that leads to the ultimate loss, then that's sufficient to satisfy the efficient proximate cause test. But here, there is literally no connection between anything that occurred at the plaintiff's premises and the shutdown orders, much less something that occurred at the premises that set in motion an unbroken sequence of events that ultimately led to the shutdown orders. Simply put, if a generalized outbreak was sufficient, the phrase at the insured premises as described in the declarations would not exist. So, we would submit that this court should follow the rulings in both Terry Black's as well as Dakota Girl's. Now, I would like to address very briefly this argument. Well, I'll address this argument because it was addressed in the briefing and frankly, it's maybe the only argument that wasn't addressed head-on by this court's decisions in Sandy Point Dental and Bradley Hotel. And that is the argument that the existence of communicable disease coverage somehow changes the meaning of the phrase direct physical loss of or damage to. That argument is absolutely wrong. It is the exact same seven-word phrase in these policies, direct physical loss of or damage to, that the court concluded in Bradley Hotel and Sandy Point must mean physical alteration of property or complete dispossession of that property. But plaintiffs here would have a court apply a completely different meaning to the exact same phrase, which also appears in a property policy and would have this court apply a far more expansive meaning to that. But that fails for really two main reasons. The first is that it violates every tenet of insurance policy interpretation. This argument is not based on the plain meaning of that phrase or the words within that phrase, which is where every policy interpretation must start. The argument is not based on any provisions which actually contain the phrase direct physical loss of or damage to, nor is it based on any contextual clues around the phrase direct physical loss of or damage to, such as period of restoration, which is often used near there and which has proved very important to a lot of courts who have issued decisions on this. Instead, we'll place- They say that there's, when they talk about repair, that is sort of an acknowledgment that there was some physical loss or damage? In the definition of period of restoration, Your Honor? Yeah. Yeah, exactly. The period of restoration provides that coverage applies until the property has been restored, replaced, or repaired, which all connote some sort of physical injury or complete dispossession of the property, property that needs to be repaired, replaced. So that's exactly right, Your Honor. So instead, what plaintiffs would have this court do is isolate the communicable disease provision, which doesn't even use the phrase direct physical loss of or damage to, and use that to inform the meaning of direct physical loss of or damage to. That is simply not reasonable. There is nothing in the policy that points the reader to communicable disease coverage to determine what that phrase means. Instead, communicable disease coverage is a standalone coverage. It has its own coverage triggers, which we've already talked about. It has its own sublimates, which we've already talked about, and it has its own period during which the coverage applies. And in any event, the policy is really straightforward when one of these additional coverages requires direct physical loss of or damage to. It actually says in the provision whether it requires direct physical loss of or damage to. That's true in the business income section, it's true in the extra expense section, and it's true in the civil authority section. They all state. There is possibly a loss of use for some reason besides repair for damage. That's what I'm trying to look at here because you're trying to spread that out, I think. Loss of use can be for a lot of reasons. When we talk about physical loss or damage, it requires some type of repair or replacement. Exactly. At least the way I focus on it, unless there's a reason to go beyond that. Exactly. And we would completely agree with that. And here, none of the plaintiffs have alleged complete dispossession. In fact, all of them under the closure orders were permitted to continue operating in some capacity. So, it wasn't the ideal use or maybe even their intended use, but they certainly weren't completely dispossessed of it. I see my time is up with that. I would ask the court to affirm unless there are any additional questions. Thank you. If I could just ask very briefly, Mr. Fetella, could you just address for us, there was some debate in the briefs about exactly where the virus exclusion applied, the textual path to applying it to coverages other than the communicable disease coverage. Could you address that briefly? Yes, I can. So, this argument, frankly, it's a tortured reading of the exclusion section and it fails for several reasons. And just to provide some context, the argument is that because there is a section titled business income and extra expense exclusions, which provide some additional limitations, plaintiffs argue those are the only exclusions that could apply to business income and extra expense coverage. First off, that violates this court's ruling in Mishala. Mishala had the exact same structure where there were three exclusion sections, one of which included the virus, and then two more additional limitations that were specific and had the exact same titles as the provisions here, but the court still enforced the virus exclusion. So, Mishala controls. Second, this disregards basic policy interpretation. It relies not on the text in the exclusion, not on the text in any of the exclusions, but instead solely on a title, which we know titles cannot inform the meaning of the text. Just as in statutory interpretation, the same is true with policy interpretation. And the third point I'll make there is that this renders the covered cause of loss requirement superfluous, that the covered cause of loss requirement is expressly stated in the business income and extra expense coverages. Covered cause of loss means direct physical loss unless the loss is excluded or limited. You look at the exclusion sections, including where the virus exclusion appears, and the lead-in language is that West Bend will not pay for loss or damage caused by or resulting from any of the following. So, these exclusions are intended to be the exclusions to the covered cause of loss. But if we accept plaintiff's reasoning, it's not just the virus exclusion that wouldn't apply. It would be none of the applied to those particular provisions. Meaning the phrase covered cause of loss has no meaning. It's completely superfluous. It wouldn't have to be written into the policy. So, for those reasons, we think the argument is totally unavailing. Thank you. Thank you. Mr. Kinsey, you asked for two minutes. We gave Mr. Fitullo a bit extra time. So, let's give you four minutes in total. I appreciate that, Your Honor. And I'll start on rebuttal with the communicable disease coverages. That is where we began. We are not arguing solely that because the policy terms at issue here are undefined, though they are undefined, that they are as a result ambiguous. We are arguing that what we have put forward is a reasonable interpretation of the policy terms. And I need not, to achieve coverage here, present the only reasonable interpretation of that policy. It is sufficient for coverage to lie under both Michigan and Illinois law that we present a reasonable interpretation of those common understandings, those phrases, among several. Nor is intent our standard here. It may have been the insurer's intent to do one thing, but a policyholder is looking at the words on this page and observing that there is not a requirement that it be only at the insured premises. At the insured premises, Your Honor, is not rendered superfluous, moreover. That term in our definition exists to require that it's affected by the coronavirus, that it's affected by the cause of the civil authority orders, which we have articulated repeatedly. That gets to our efficient or dominant approximate cause argument and analysis. And with regard to the other cases that have been cited by the insurer in this case, directly to is a very different standard. As we have heard, given the heavy discussion of how directly influences direct physical loss or damage, we would assume that direct, where it is used in a communicable disease provision, would have some effect over and beyond at. Directly at versus at are two very different phrases. And with regard to Terry Black's, Your Honor, this is the Fifth Circuit case, we have a situation where the Fifth Circuit took a substantially different policy language in a different type of coverage, an REE coverage, that's the heading, but it also, in its analysis, emphasized that there were specific coverages affecting a specific business and cited policy language to that effect. This policy's language doesn't limit coverages where those coverages may affect other businesses. That was one of the points of the Fifth Circuit product. And with respect, this policy's language is different, such that this court can and should take a different approach. Our requirement under Illinois law is that we must present a reasonable interpretation of this policy language for coverage to apply. And we have done just that. With regard to direct physical loss or damage, Your Honor, because I understand that that is a point that has long been in this court's mind, any analysis of direct physical loss or damage in these policies must start with a definition of loss that includes the types of losses covered under this coverage extension. Because while we don't use the term direct physical loss or damage, we do use loss. And every analysis of this court, including in Sandy Point, has begun with that term. So as we approach the analysis of direct physical loss or damage, we would consider here a definition of loss that accounts for such things as cleaning and disinfecting the property or to evacuate the property, which the court in Sandy Point was Yes, Your Honor. And that'd be any kind of loss beyond having to repair some kind of damage. Your Honor, yes. I look at the Sandy Point dental. Yes, Your Honor. We would say here that the use of loss is not expanded indefinitely by any means, but would be expanded to the types of issues that are contemplated under the communicable disease coverage, because that communicable disease coverage uses the term loss. So they would incorporate, there are a list of eight different types of coverage within the communicable disease provision. We would expect direct physical loss in this policy to be informed by the use of that term loss. And I see I'm out of time. If I have not answered your question, Your Honor, I'm happy to continue. But we would respect your judgment. Why don't you? Did you say you have not answered? I'm not certain, Your Honor. Have I answered your question? Well, if you're talking about what I think about loss or damage, that I do look at the Sandy Point dental. Yes. Damage. And it means that there's some, like repair needed. There was some physical, I'll use that word physical because they do, physical loss or damage. And there are a lot of other ways to have a loss besides that. And you're saying you're going to go beyond physical loss or damage with maybe some undetected disease or some other rumor or something else that causes a loss. We would expect, Your Honor, that this court would apply direct and physical to any definition of loss. But our starting point for loss would encompass cleaning equipment, replacing consumable goods were declared by the jurisdictional board to be contaminated, the same things that are described in the communicable disease coverage. That is how we are putting forward that in this policy, this specific policy, not the policy that was before the court in Sandy Point dental. The analysis should be conducted anew because we are starting from a new position. And that position encompasses a definition of loss within direct physical loss or damage, not the sum total of direct physical loss or damage, but part and parcel of direct physical loss or damage loss that encompasses communicable disease. And of course, the communicable disease coverage itself is separate and removed from this. It is its own separate, independent grant of coverage. And we have put forward a reasonable interpretation of that policy language. Well, thank you. Thank you both very much. Thank you, Mr. Kinsey. And Mr. Fitula, stay where you are. And the case will be taken under advisement.